U.S. DEPARTMENT OF JUSTICE, Washington, D.C. and Office of Inspector General, U.S. Department of Justice, Petitioners,

v.

FEDERAL LABOR RELATIONS AUTHORITY, Respondent.

American Federation of Government Employees Local 709, Intervenor

No. 00–1433.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 13, 2001.

Decided Oct. 9, 2001.

Howard S. Scher, Attorney, U.S. Department of Justice, argued the cause for petitioners. With him on the briefs was William Kanter, Deputy Director.

Ann M. Boehm, Attorney, Federal Labor Relations Authority, argued the cause for respondent. With her on the brief was David M. Smith, Solicitor. William R. Tobey, Deputy Solicitor, entered an appearance.

Stuart A. Kirsch and Mark D. Roth were on the brief for intervenor.

Before: TATEL and GARLAND, Circuit Judges, and WILLIAMS, Senior Circuit Judge*.

Opinion for the Court filed by Senior Judge WILLIAMS.

* Senior Circuit Judge Williams was in regular active service at the time of oral argument.

STEPHEN F. WILLIAMS, Senior Circuit Judge:

This is an appeal from the Federal Labor Relations Authority's finding of an unfair labor practice on the part of the Department of Justice's Office of the Inspector General ("OIG"). The FLRA found that the OIG had violated the so-called *Weingarten* rule during its investigation of a Department employee, see *NLRB v. J. Weingarten, Inc.*, 420 U.S. 251, 95 S.Ct. 959, 43 L.Ed.2d 171 (1975) (codified as to federal employees in 5 U.S.C. § 7114(a)(2)(B)), by refusing the employee's request for the assistance of a union representative. Believing the case to be controlled by Supreme Court precedent, we uphold the FLRA's decision.

\* \* \*

The OIG received a report that an employee of the Federal Correctional Institution Englewood, in Littleton, Colorado had smuggled illegal drugs into that facility. The employee, a member of a bargaining unit, asked for union representation, but the investigating agents denied the request and interviewed him anyway. The criminal investigation was later closed when the prison warden wrote a memorandum to the employee informing him that "there was nothing to substantiate the allegations, and that there would be no further investigation."

The union representing the employee filed an unfair labor practice charge, claiming that the agents' denial of the employee's request had violated 5 U.S.C. § 7114(a)(2)(B). That section requires an agency to give an employee the opportunity to have a union representative at an interrogation under certain circumstances. The FLRA's General Counsel issued a complaint. The ALJ granted summary judgment for the FLRA, and the Department and OIG filed exceptions. In the meantime the Supreme Court issued an opinion upholding a prior FLRA decision that a NASA Inspector General was a "representative of the agency" within the meaning of § 7114(a)(2)(B), and that he therefore violated that section when he interviewed a NASA employee without allowing adequate union representation. *National Aeronautics and Space Administration v. FLRA*, 527 U.S. 229, 119 S.Ct. 1979, 144 L.Ed.2d 258 (1999) ("*NASA*"). Following that decision, the FLRA adopted the ALJ's decision and order. *U.S. Department of Justice v. Federal Labor Relations Authority*, 56 FLRA 556 (2000). It rejected the Department's argument that, in view of the Court's statement in *NASA* that it was not considering the applicability of § 7114(a)(2)(B) to "law enforcement officials with a broader charge," 527 U.S. at 244 n. 8, 119 S.Ct. 1979, the section could not properly be applied to the OIG's *criminal* investigations—as distinct from the administrative investigation at issue in *NASA*. Like the FLRA, we find no basis for carving out such an exception from *NASA*.

\* \* \*

■ The statutory provision at issue here provides in relevant part:

(2) An exclusive representative of an appropriate unit in an agency shall be given the opportunity to be represented at—

> (B) any *examination* of an employee in the unit *by a representative of the agency* in connection with an investigation if—

> (i) the employee reasonably believes that the examination may result in disciplinary action against the employee; and

> (ii) the employee requests representation.

5 U.S.C. § 7114(a)(2)(B) (emphasis added). As the section is part of the FLRA's organic statute, we owe its interpretation deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). See *NASA*, 527 U.S. at 234, 119 S.Ct. 1979. To the extent that the FLRA decision is simply an interpretation of *NASA* itself, however, we owe the FLRA no deference. See *New York v. Shalala*, 119 F.3d 175, 180 (2d Cir.1997) (holding that "an agency has no special competence or role in interpreting a judicial decision"); cf. *Professional Reactor Operator Society v. United States Nuclear Regulatory Commission*, 939 F.2d 1047, 1051 (D.C.Cir.1991) (deference is inappropriate when the agency interprets a statute it is not charged to administer). In fact the case turns on the force of the Department's efforts to distinguish *NASA*, and we agree with the Authority's conclusion that the attempted distinctions are flawed. Like the Court in *NASA* itself, we need not consider whether § 7114(a)(2)(B) permits other readings. See *NASA*, 527 U.S. at 234, 119 S.Ct. 1979.

■ As in *NASA*, no one here questions that there was an "examination" of a bargaining unit employee, that the examination was "in connection with an investigation," that the employee requested representation, or that the employee reasonably believed that he might be subject to disciplinary action. See *NASA*, 527 U.S. at 233, 119 S.Ct. 1979. Thus, the only issue in dispute is whether, as the Court found there, the Authority could find that the OIG agents were "representative[s] of the agency" when they conducted the interview.

To support the proposed distinction between criminal and administrative investigations, the Department points to a provision of the Inspector General Statute that it says creates special consequences for an investigation's being criminal. 5 U.S.C.App. § 4(d) requires any OIG agent to "report expeditiously to the Attorney General whenever the Inspector General has reasonable grounds to believe there has been a violation of Federal criminal law." *Id.* According to the Department, this implies that whenever a criminal investigation is underway, the OIG agent is for purposes of § 7114(a)(2)(B) no longer a "representative of the agency" but rather answers to the Attorney General.

First we note that § 4(d) is triggered whenever an Inspector General comes upon "reasonable grounds to believe" that federal criminal law was violated. This is a broader test than what the Department regards as the key distinction of this case from *NASA*, namely the OIG's own classification of the investigation as criminal; our acceptance of it as controlling would thus sweep an unknown number of administrative inquiries into the exception. More important, nothing in § 4(d) overrides 5 U.S.C.App. § 3(a), which requires that each Inspector General shall "report to and be under the general supervision of the head of the establishment involved...." The *NASA* Court relied at least in part on this provision in holding that OIG agents are "representatives" of their respective agencies. 527 U.S. at 239, 119 S.Ct. 1979. Section 4(d)'s extra reporting requirement does not extract OIG agents from the organizational spot that is assigned them by § 3(a)—under the head of the relevant *agency*.

Thus the Department's effort at a statutory distinction between criminal and administrative investigations fails. Its remaining argument is mostly that the *NASA* decision rested on factors that are peculiar to administrative investigations and therefore it does not apply to criminal ones. None of the distinctions seems convincing.

First, the Department argues that *NASA* was based on the fear that agency managers might hand off their dirty work to OIG agents, thus circumventing § 7114(a)(2)(B) by using the OIG to conduct investigations for their own purposes. See *NASA,* 527 U.S. at 234, 119 S.Ct. 1979. With criminal investigations, the Department says, this concern is "totally absent" because agency managers have no "criminal investigative duties" in the first place. But the *NASA* decision rested (in part) on a recognition that the overlaps between "pure" management activities and OIG duties would naturally generate cooperation between agency managers and OIGs. 527 U.S. at 242, 119 S.Ct. 1979. It would be astonishing for us to ignore the parallel, and equally obvious, overlap of administrative and criminal enforcement goals and to create an exception resting on this ignorance. In fact, we once observed that "the results of inspections, when no criminal proceedings ensue, are routinely turned over to management for possible use in disciplinary actions." *U.S. Postal Service v. NLRB,* 969 F.2d 1064, 1072 (D.C.Cir. 1992).

Second, the Department argues that *NASA* was in part compelled by the fact that Inspectors General, when conducting an administrative investigation, need the cooperation of agency managers, who can direct the employee's use of his time—here, to attend the interview and answer questions. See *NASA,* 527 U.S. at 242, 119 S.Ct. 1979. The Department attributes this power to the fact that the employee's refusal to answer questions related to his duties *may* be used against him in an administrative investigation. See *Kalkines v. United States,* 200 Ct.Cl. 570, 473 F.2d 1391, 1393 n. 4 (Ct.Cl.1973). In contrast, says the Department, the employee's refusal to answer questions in a criminal investigation *may not* be used against him. See *Garrity v. New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). It follows that the agency manager has "no role" to play in forcing the employee to answer questions in a criminal investigation.

We cannot see that the "no role" consequence follows. In *both* administrative and criminal investigations, the employee enjoys a Fifth Amendment right not to incriminate himself in his answers to a government investigator. The only difference appears to be that in administrative investigations, the investigators usually grant criminal immunity to the employee, see *Kalkines,* 473 F.2d at 1393 n. 4, so that they may threaten the employee with administrative penalties unhampered by the Fifth Amendment. But this is a choice made by the Inspector General in a given case, depending on what penalties he or she wishes to seek. In other words, the difference between administrative and criminal investigations in this respect is one of investigative strategy, not one of law. In either case, both OIG and agency management can benefit by mutual cooperation, and it was the likelihood of such cooperation that the *NASA* Court saw as militating in favor of treating OIG interrogators as "representatives of the agency."

Third, the Department argues that in a criminal investigation an employee has the right to an attorney and therefore doesn't need a union representative. But nothing in the language of the statute or of *NASA* suggests that the application of § 7114(a)(2)(B) depends on whether a particular employee "needs" union representation. Moreover, the section implicates the union's rights as well. See *Weingarten,* 420 U.S. at 260–61, 95 S.Ct. 959. In fact, we've already rejected a suggestion that an interrogatee's right to counsel could render § 7114(a)(2)(B) inapplicable. *American Federation of Government Employees, Local 1941, AFL–CIO v. FLRA,* 837 F.2d 495, 499 n. 5 (D.C.Cir.1988).

Apart from the supposedly distinguishing "factors" and the reference to § 4(d), the Department relies heavily on the *NASA* Court's statement that it was not deciding the applicability of § 7114(a)(2)(B) to "law enforcement officials with a broader charge." *NASA,* 527 U.S. at 244 n. 8, 119 S.Ct. 1979. But the reference doesn't appear to address OIG agents at all. In the previous sentence the Court mentioned the concern that applying § 7114(a)(2)(B) to the OIG might hinder "joint or independent FBI investigations of federal employees." *Id.* Thus the later reference to "law enforcement officials" clearly means "FBI officials" or the like, not an agency's OIG officials pursuing a criminal investigation on their own. As was true for the Court in *NASA,* we need not address the possible application of § 7114(a)(2)(B) to a joint OIG/FBI investigation.

The Department also argues that application of § 7114(a)(2)(B) to criminal investigations is "simply unworkable." Specifically, it says, the union representative might be called to testify at a trial, thereby working against the employee's true interests. But where an administrative investigation turns out to uncover criminality, the union representative may equally be called to testify. And if the employee is concerned about the possible testimony of the union representative, he can simply decide not to ask for one. Cf. *U.S. Postal Service,* 969 F.2d at 1072 n. 5 (rejecting idea that risks of a union representative's testimony against an employee could enable the *employer* to deny the *Weingarten* right). Perhaps inconsistently, the Department also says that application of § 7114(a)(2)(B) will impede criminal investigations. We have no doubt that there is a risk of such impediments, but it presumably closely parallels the risks to effective management (and successful criminal prosecutions) that flow from application of § 7114(a)(2)(B) to administrative investigations, risks that the Court regarded as "not weighty enough to justify a nontextual construction of § 7114(a)(2)(B) rejected by the Authority." *NASA,* 527 U.S. at 243–44, 119 S.Ct. 1979.

Further, on the score of workability, the Department's approach presents problems of its own. Many if not most investigations will have both administrative and criminal potential. Classification appears to depend—as one would expect—on the ongoing flow of information. The investigation at issue in *NASA,* for instance, was instigated by information from the FBI, see 527 U.S. at 231–32, 119 S.Ct. 1979, and according to the FLRA decision involved "a serious threat to co-workers," *NASA,* 50 F.L.R.A. 601, 1995 FLRA LEXIS 82, at *3 (1995). See also *id.* at *48 (ALJ decision, noting that documents "set forth potential threats and plans for violence"). The investigator determined, "after consulting appropriate investigative agencies," that the employee "had not violated the law and, as a result, that the matter would be administratively, rather than criminally, investigated." *Id.* at *3 n. 2. At what point, then, would the agent's investigation have become subject to § 7114(a)(2)(B)? When the agent—to some degree independently—decided to treat it administratively? What if he had viewed the matter as unclassified, and interviewed the employee in part in order to decide on the classification? Such possibilities erode the likelihood of any bright-line distinction between administrative and criminal investigations.

\* \* \*

Accordingly, the order of the FLRA is *Affirmed.*