# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued February 18, 2014        Decided June 17, 2014

No. 12-1199

NATIONAL TREASURY EMPLOYEES UNION,
PETITIONER

v.

FEDERAL LABOR RELATIONS AUTHORITY,
RESPONDENT

———

On Petition for Review of an Order and Decision
of the Federal Labor Relations Authority

———

*Paras N. Shah* argued the cause for the petitioner. *Gregory O'Duden*, *Larry J. Adkins* and *Julie M. Wilson* were on brief.

*Zachary R. Henige*, Attorney, Federal Labor Relations Authority, argued the cause for the respondent. *Rosa M. Koppel*, Solicitor, and *David M. Shewchuk*, Deputy Solicitor, were on brief.

*Howard S. Scher*, Attorney, United States Department of Justice, argued the cause for *amicus curiae* United States of America. *Stuart F. Delery*, Principal Deputy Assistant Attorney General, and *Leonard Schaitman*, Attorney, were on brief.

Before: HENDERSON, ROGERS and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LeCRAFT HENDERSON, *Circuit Judge*: The National Treasury Employees Union (NTEU or Union) petitions the Court for review of a Federal Labor Relations Authority (FLRA or Authority) decision finding, *inter alia*, that the Internal Revenue Service (IRS) did not commit an unfair labor practice when Union representatives were excluded from "suitability" interviews of "covered" IRS personnel conducted by Office of Personnel Management (OPM) investigators. Under the Federal Service Labor-Management Relations Statute (FSLMRS or Statute), union representatives are permitted to attend "any examination" of a federal employee the union represents if (1) the examination is conducted by a "representative" of the employing agency and (2) the employee requests representation and reasonably believes that the meeting may result in disciplinary action. 5 U.S.C. § 7114(a)(2)(B). The FLRA determined that covered IRS personnel are not entitled to union representation at suitability interviews conducted by OPM investigators because OPM investigators do not act as "representatives" of the IRS during the interviews. For the reasons set forth below, we deny NTEU's petition for review.

## I. Background

### A.

The FSLMRS "establishes a collective bargaining regime in the federal public sector," *Nat'l Treasury Emps. Union v. FLRA*, 414 F.3d 50, 52 (D.C. Cir. 2005) (quotation marks omitted), and codifies "various labor rights" accorded federal employees, *Am. Fed'n of Gov't Emps., Local 3669 v. Shinseki*,

709 F.3d 29, 30 (D.C. Cir. 2013). It expressly grants a federal employee and his union certain rights, known as "*Weingarten* rights,"[1] including that

> [a]n exclusive representative of an appropriate unit in an agency shall be given the opportunity to be represented at . . . any examination of an employee in the unit by a representative of the agency in connection with an investigation if . . . (i) the employee reasonably believes that the examination may result in disciplinary action against the employee; and (ii) the employee requests representation.

5 U.S.C. § 7114(a)(2)(B). A federal employer's failure to provide an employee his statutorily conferred *Weingarten* rights constitutes an unfair labor practice under the Statute. *See* 5 U.S.C. § 7116(a)(1) (unfair labor practice for federal employer "to interfere with, restrain, or coerce any employee in the exercise by the employee of any right under this chapter"); *id.* § 7116(a)(8) (unfair labor practice for federal employer "to otherwise fail or refuse to comply with any provision of this chapter").

The question before us is whether the statutory *Weingarten* rights of certain "covered" IRS personnel are triggered when an OPM investigator conducts a "suitability" interview of them. A covered position is "a position in the

---

[1] "*Weingarten* rights" refers to the United States Supreme Court's decision in *NLRB v. J. Weingarten, Inc.*, 420 U.S. 251 (1975). There, the Court upheld the National Labor Relations Board's determination that, under section 7 of the National Labor Relations Act, 29 U.S.C. § 157, an employee represented by a union is entitled to union representation during an interview the employee reasonably believes will result in discipline. *See Weingarten*, 420 U.S. at 260-64.

competitive service, a position in the excepted service where the incumbent can be noncompetitively converted to the competitive service, and a career appointment to a position in the Senior Executive Service." 5 C.F.R. § 731.101(b). Notwithstanding exceptions inapplicable here, an individual seeking covered employment must undergo an investigation in order to determine his "suitability for employment." *Id.* § 731.104(a). The President, to whom the Congress has granted broad authority to regulate entry in the civil service, *see, e.g.*, 5 U.S.C. §§ 3301, 3302, has delegated to OPM the authority to conduct the suitability investigation, *see Dickson v. OPM*, 828 F.2d 32, 33-34 (D.C. Cir. 1987) ("[T]he President has delegated to OPM, *inter alia*, the authority . . . to investigate and determine the suitability of persons entering or employed in nonsensitive positions within the competitive civil service." (citing Exec. Order No. 10,450)); *see also* 5 C.F.R. § 731.104(a) ("[A]ppointments to covered positions . . . require the person to undergo an investigation *by OPM* or by an agency with delegated authority *from OPM* to conduct investigations." (emphasis added)); *id.* § 736.201(a) ("[T]he investigation of persons entering or employed in the competitive service, or by career appointment in the Senior Executive Service, is the responsibility of OPM."); *id.* § 5.2(a) (OPM Director may investigate "the qualifications and suitability of applicants for positions in the competitive service"). As part of the suitability investigation, the covered IRS personnel at issue here are required to participate in an interview. OPM has the authority to sanction anyone who refuses to furnish testimony during a suitability interview. *See* 5 C.F.R. § 731.103(g).[2]

---

[2] "Excepted service" personnel are those IRS personnel who are not "covered." Excepted service appointments "include all civilian positions in the executive branch of the Government which are specifically excepted from the requirements of the Civil Service Act or from the competitive service by or pursuant to statute or by

Until 2008, the IRS used its own investigators to investigate and interview both covered and excepted personnel. As noted, the investigation of a covered individual is an OPM prerogative but an agency may annually request a delegation of authority from OPM to conduct its own suitability investigation of an individual seeking covered employment. *See id.* § 736.201(b). The IRS requested and received such authority each year until 2008. When the IRS conducted its own investigations and interviews (both suitability and non-suitability), it permitted NTEU representatives to attend suitability interviews of covered personnel and background interviews of excepted personnel on official time.

In 2008, the IRS did not renew its request for authority to conduct suitability investigations and, as a result, the delegation from OPM lapsed. Subsequently, OPM investigators began conducting suitability investigations of covered IRS personnel and also took over the background investigation of excepted IRS personnel. Because OPM's policy prohibits NTEU representatives from attending investigatory interviews of both covered and excepted personnel, the IRS stopped giving Union representatives official time to attend interviews.

Although the IRS no longer conducts suitability or background investigations, it has retained a role in the investigatory process. For example, the IRS initiates

---

OPM." 5 C.F.R. § 1.4(a). Although an individual appointed to an excepted service position with the IRS is not required to undergo a suitability investigation, the IRS does require the individual to undergo a background investigation, which includes an interview component. OPM also conducts this background investigation and interview.

investigations of all candidates for employment by requiring them to complete certain forms and, once the forms are complete, it authorizes OPM to proceed with an investigation. In addition, interviews are often conducted during IRS business hours and in IRS work space and personnel must obtain permission from IRS supervisors before attending the interviews. The IRS informs candidates that they are required to participate in the investigatory interviews as a condition of employment and are subject to discipline if they do not cooperate. Finally, the IRS typically retains the investigation file assembled by OPM at the end of an investigation. The suitability and background investigations are "management's tool" for evaluating "character, honesty, integrity and loyalty." Joint Appendix (JA) 248, *Nat'l Treasury Emps. Union v. FLRA*, No. 12-1199 (D.C. Cir. Dec. 14, 2012).

At the conclusion of the suitability investigation, a covered individual receives a "suitability determination." A "suitability determination" is "a decision by OPM or an agency with delegated authority that a person is suitable or is not suitable for employment in covered positions in the Federal Government or a specific Federal agency." 5 C.F.R. § 731.101(b). Pursuant to a standing OPM delegation, the IRS makes the suitability determinations for "applicants" for, and "appointees" to, covered positions. *See* 5 C.F.R. § 731.103(a). An applicant is "a person who is being considered or has been considered for employment" and an "appointee" is "a person who has entered on duty and is in the first year of a subject-to-investigation appointment." *Id.* § 731.101(b). The IRS's authority to make a suitability determination for an applicant or appointee, however, is not without limits, to wit: the IRS must conform to OPM policies and standards in making suitability determinations, *see id.* § 731.103(c), and OPM reserves the right to revoke its suitability determination delegation if the IRS fails to do so,

*see id.* § 731.103(f); OPM oversees the IRS's exercise of its authority to make suitability determinations, *see* 5 U.S.C. § 1104(b)(2);[3] OPM retains jurisdiction of a case "where there is evidence that there has been a material, intentional false statement, or deception or fraud in examination or appointment" and of a case "involving a refusal to furnish testimony," 5 C.F.R. § 731.103(g); the IRS must refer cases to OPM when "Governmentwide debarment by OPM . . . may be an appropriate action," *id.* § 731.103(b); and OPM "may, in its discretion, exercise its jurisdiction . . . in any case it deems necessary," *id.* § 731.103(g). Although the IRS makes the suitability determination with respect to an *applicant* and *appointee*, it does not do so with respect to another, discrete category of IRS personnel, namely, a covered IRS "*employee*."[4]  *See id.* § 731.105(e).

**B.**

In response to OPM's policy of excluding NTEU representatives from investigatory interviews and the IRS's corresponding failure to give Union representatives official time to attend the interviews, NTEU filed two grievances against the IRS.  The Union alleged, *inter alia*, that the failure to allow Union representatives to attend suitability and background investigation interviews of IRS personnel on official time constituted an unfair labor practice under section

---

[3] The Congress has directed OPM to "establish and maintain an oversight program to ensure that activities under any authority delegated [from OPM to an agency] are in accordance with the merit system principles and the [OPM] standards."  5 U.S.C. § 1104(b)(2).

[4] An "employee" is "a person who has *completed* the first year of a subject-to-investigation appointment."  5 C.F.R. § 731.101(b) (emphasis added).

7116(a)(1), (8) of the FSLMRS as well as a violation of the IRS's collective bargaining agreement (CBA) with NTEU. The parties could not resolve the dispute and the grievances were eventually submitted to an arbitrator.

The arbitrator denied NTEU's grievances, concluding that IRS personnel are not entitled to union representation at investigatory interviews conducted by OPM investigators. The statutory *Weingarten* rights of IRS personnel are not triggered by an interview conducted by OPM investigators, he found, because OPM investigators do not act as "representatives" of the IRS during the interview. In the arbitrator's view, OPM investigators are "legally independent" and the IRS has no authority "to tell OPM how its investigators should go about conducting their investigatory interviews." JA 199-200. According to the arbitrator, "[t]here is nothing IRS or NTEU can do about" OPM's decision "not to permit union representatives to participate in" the interviews. JA 200. Based on these determinations, the arbitrator concluded that the exclusion of NTEU representatives from interviews of IRS personnel does not constitute a violation of the Statute or the CBA.

The Union filed exceptions to the arbitrator's decision with the FLRA, making the same argument it had made to the arbitrator. In the alternative, it argued that OPM investigators act as IRS representatives at least when they investigate excepted personnel (that is, personnel who are excepted under 5 C.F.R. § 1.4(a), *see supra* note 2) and that the failure to allow union representation for them violates the Statute and the CBA.

On February 22, 2012, the FLRA granted in part and denied in part the Union's exceptions. It denied the Union's exceptions with respect to covered personnel, finding that OPM investigators do not act as IRS representatives when they interview them in the course of a suitability investigation.

The FLRA interpreted "representative of the agency" as used in section 7114 of the Statute to require the same "function" and "control" analysis it had used in the past in cases involving an outside contractor as a representative of an agency. *See Nat'l Treasury Emps. Union*, 66 F.L.R.A. 506, 509-10 (2012) (citing *Pension Benefit Guar. Corp.* (*PBGC*), 62 F.L.R.A. 219 (2007) (citing *Social Security Admin.* (*SSA*), 59 F.L.R.A. 875 (2004))). Under its function and control test, an individual is a representative of an agency if he (1) performs an agency function and (2) operates under agency control. Applying the test, the Authority first concluded that OPM investigators "were performing an OPM function" (and not any IRS function) when "interviewing and investigating covered [individuals] . . . subject to OPM suitability determinations." *Id.* at 510 (quotation marks omitted). The Authority also determined that OPM investigators do not operate under IRS control during interviews of covered personnel because, as the arbitrator found, OPM investigators are "legally independent" of the IRS and the IRS has "no basis or authority . . . to tell OPM how its investigators should go about conducting their investigatory interviews." *Id.* (quotation marks omitted). The Authority noted that NTEU did not challenge the arbitrator's determinations as "nonfacts (or on any other ground)." *Id.* In denying the Union's exceptions with respect to covered personnel, the Authority necessarily concluded that the IRS had not committed an unfair labor practice or violated the CBA by failing to ensure union representation during OPM interviews of covered personnel.

The Authority, however, granted NTEU's exceptions with respect to excepted personnel. It concluded that OPM investigators do perform an IRS function when they interview excepted individuals in conjunction with a background investigation because the IRS, not OPM, is "primarily responsible for the conduct of background investigations" of

excepted personnel. *Id.* (quotation marks omitted). Moreover, the Authority determined that OPM investigators operate under the "ultimate control" of the IRS when investigating excepted personnel because the IRS has "the authority to remove excepted employees based on information collected during the investigations." *Id.* at 510-11 (citation, quotation marks, brackets and ellipses omitted). In light of these determinations, the Authority held that excepted individuals are entitled to union representation at their OPM background investigation interviews pursuant to 5 U.S.C. § 7114(a)(2)(B) and that the IRS committed an unfair labor practice and violated the CBA by not ensuring such representation. It remanded the award "to the parties for resubmission to the Arbitrator, absent settlement, to determine an appropriate remedy." *Id.* at 511.

The Union timely petitioned for review of the Authority's decision, but only in part. It limits its requested review to the Authority's determination that the exclusion of Union representatives from suitability interviews of covered IRS *appointees*—*i.e.*, covered personnel who have "entered on duty and [are] in the first year of a subject-to-investigation appointment," 5 C.F.R. § 731.101(b)—is not an unfair labor practice under the Statute. Br. for Pet'r 10, *Nat'l Treasury Emps. Union v. FLRA*, No. 12-1199 (D.C. Cir. Dec. 14, 2012) (describing question presented as whether FLRA erred in concluding that "[OPM] investigators are not acting as 'representatives' of the [IRS], within the meaning of 5 U.S.C. § 7114, when they conduct suitability investigation interviews of 'covered' employees in their first year of employment").

## II. Jurisdiction

The "first and fundamental question" we are "bound to ask and answer" is whether we have jurisdiction to decide NTEU's petition for review. *Bancoult v. McNamara*, 445 F.3d 427,

432 (D.C. Cir. 2006) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)). The requirement that we address jurisdiction "as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." *Steel Co.*, 523 U.S. at 94-95 (quotation marks and brackets omitted); *see also Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008) (noting "we must examine" question of statutory jurisdiction "before we can determine the merits" (quotation marks omitted)).

The first jurisdictional matter we address is whether the Authority's February 22, 2012 decision is final and reviewable. The FSLMRS provides that

> **(a)** Any person aggrieved by any *final order* of the Authority other than an order under—
>
> > **(1)** section 7122 of this title (involving an award by an arbitrator), unless the order involves an unfair labor practice under section 7118 of this title . . .
>
> may, during the 60-day period beginning on the date on which the order was issued, institute an action for judicial review of the Authority's order . . . in the United States Court of Appeals for the District of Columbia.

5 U.S.C. § 7123(a) (emphasis added). Given that the Authority's decision on review of the arbitrator's award plainly involves an unfair labor practice allegedly committed by the IRS, *see Overseas Educ. Ass'n v. FLRA*, 824 F.2d 61, 71 (D.C. Cir. 1987) (case "involves" unfair labor practice if unfair labor practice is "either an explicit ground for or [is] necessarily implicated by the Authority's decision"); *see also Ass'n of Civilian Technicians, N.Y. State Council v. FLRA*, 507 F.3d 697, 700 (D.C. Cir. 2007) (suggesting case "involves" unfair labor practice if Authority engages in "substantive discussion

of an unfair labor practice claim"), we may review the decision so long as it constitutes a "final order." If the Authority decision is not final, however, we are without jurisdiction to entertain NTEU's challenge. *See Turgeon v. FLRA*, 677 F.2d 937, 938-40 (D.C. Cir. 1982) (court has no jurisdiction to review FLRA decision that does not constitute final agency action).

The United States Supreme Court has set forth a two-part test to determine the finality of an agency decision:

> First, the action under review must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. Second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow.

*Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, 13 (D.C. Cir. 2005) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)) (quotation marks and citations omitted). An agency remand order is generally considered non-final for the purpose of judicial review. *See Meredith v. Fed. Mine Safety & Health Review Comm'n*, 177 F.3d 1042, 1047 (D.C. Cir. 1999); *Wash. Metro. Area Transit Auth. v. Dir., Office of Workers' Comp. Programs*, 824 F.2d 94, 95-96 (D.C. Cir. 1987) (per curiam) (collecting cases); *see also Pueblo of Sandia v. Babbitt*, 231 F.3d 878, 881 (D.C. Cir. 2000) (district court order remanding case to agency "for significant further proceedings" is not final).

We are satisfied that the Authority's order is final and reviewable. Although the Authority's decision plainly "mark[ed] the consummation of the [Authority's] decisionmaking process" with respect to covered personnel, *Nat'l Ass'n of Home Builders*, 415 F.3d at 13 (quoting *Bennett*,

520 U.S. at 177-78), we twice ordered the parties to brief finality in light of the Authority's remand regarding excepted personnel. The remand for a remedy determination undoubtedly rendered the portions of the Authority's decision regarding excepted personnel non-final, *see Meredith*, 177 F.3d at 1047; *see also Pueblo of Sandia*, 231 F.3d at 881-82, and our concern at the time was that the lack of finality as to them prevented us from reviewing *any* part of the Authority's decision, including its final determination regarding covered personnel. *Cf. Wash. Metro. Area Transit Auth.*, 824 F.2d at 95-96 (benefits review board's remand to administrative law judge for "further fact-finding and a determination of damages" precluded court from reviewing legal question "conclusively determined" by board). But we need not decide the effect of the remand because, as amicus counsel from the Department of Justice discussed at oral argument, the remedy issue with respect to excepted personnel has settled. Recording of Oral Argument at 22:58 (Feb. 18, 2014). The only non-final portion of the Authority's decision has now been fully resolved and, accordingly, lack of finality is not an obstacle to our review.

We next consider the Authority's claim that the Court lacks jurisdiction over NTEU's petition because "the issue on which [NTEU] now seeks judicial review—whether OPM's investigators are representatives of the IRS when interviewing covered employees *in their first year of service*"—was not presented to the Authority. Br. for Resp't 9, *Nat'l Treasury Emps. Union v. FLRA*, No. 12-1199 (D.C. Cir. Jan. 14, 2013). Section 7123(c) of the FSLMRS provides that "[n]o objection that has not been urged before the Authority, or its designee, shall be considered by the court, unless the failure or neglect to urge the objection is excused because of extraordinary circumstances." 5 U.S.C. § 7123(c); *see also Am. Fed'n of State, Cnty. & Mun. Emps. Capital Area Council 26 v. FLRA*,

395 F.3d 443, 451 (D.C. Cir. 2005). We have enforced section 7123(c) strictly, recognizing that if a party were permitted to raise an argument for the first time in its petition for review, "the initial adjudicatory role Congress gave to the Authority would be transferred in large measure to this court, in plain departure from the statutory plan." *Dep't of Treasury v. FLRA*, 707 F.2d 574, 580 (D.C. Cir. 1983).

A party is not required to invoke "magic words" in order to adequately raise an argument before the Authority. *U.S. Dep't of Commerce v. FLRA*, 672 F.3d 1095, 1102 (D.C. Cir. 2012). Instead, an argument is preserved if the party has "fairly brought" the argument "to the Authority's attention." *U.S. Dep't of Commerce v. FLRA*, 7 F.3d 243, 245 (D.C. Cir. 1993). The Union advanced two primary arguments before the Authority. First, it argued that the denial of *Weingarten* rights for *all* covered and excepted IRS personnel constitutes a violation of the Statute and the CBA because OPM investigators act as IRS representatives during all interviews of IRS personnel. In support of this argument, NTEU reasoned that, because "[i]t is IRS'[s] responsibility to make suitability determinations of applicants and individuals in their first year of employment," OPM investigators conduct interviews of *all* personnel on behalf of the IRS and therefore act as IRS representatives during the interviews. Union's Exceptions to Arbitrator's Award 27-28, *Nat'l Treasury Emps. Union*, No. 0-AR-4765 (F.L.RA. June 13, 2011) (JA 174-75); *see also id.* at 28 ("Thus, while OPM has the regulatory authority to conduct the investigations, it does so in order to permit [the] IRS to make the suitability adjudications required of it by regulation."). In the alternative, NTEU asserted before the Authority that the IRS's failure to ensure representational rights for excepted personnel violates both the Statute and the CBA because OPM investigators act as IRS representatives at least when they interview them.

In its brief to us, the Union has narrowed its argument, asserting that the IRS committed an unfair labor practice when it failed to ensure representational rights during suitability interviews of covered individuals "in their first year of employment," *i.e.*, covered appointees. Br. for Pet'r 21. In support, the Union uses the same reasoning it argued to the Authority, claiming that, because "suitability determinations of appointees in covered positions are an IRS function," OPM investigators conduct interviews of covered appointees *for* the IRS and therefore act as IRS representatives. *Id.* at 26-28. In response, the Authority argues that the phrase, " 'in their first year of employment,' introduces a new concept not previously argued to the Authority" and therefore prevents us from adjudicating NTEU's petition. Br. for Resp't 10-11 (describing argument in Union's brief as "more than a new 'twist' " on argument made to FLRA and "a new argument altogether").

We disagree. NTEU's brief asserts a narrower version of the argument it made to the Authority. As explained above, the Union argued to the FLRA that, because the IRS has authority to make suitability determinations for applicants and appointees to covered positions, OPM investigators conduct interviews of *all* IRS personnel for the IRS and therefore act as IRS representatives during all interviews. Given that covered appointees are a subclass of all IRS personnel, the first argument presented to the Authority "necessarily include[d]" NTEU's claim here that OPM investigators conduct interviews of covered appointees for the IRS and thus act as IRS representatives during such interviews. *Trump Plaza Assocs. v. NLRB*, 679 F.3d 822, 830 (D.C. Cir. 2012) (argument that statements were "adequately disseminated to affect [a union] election necessarily includes the argument that" statements were "adequately disseminated under [NLRB] precedent").

In fact, the reasoning set forth in the Union's brief is virtually identical to the reasoning the Union presented to the Authority; it has simply used that reasoning here to support a more limited claim.[5]

### III. Merits Analysis

We review Authority decisions in accordance with section 10(e) of the Administrative Procedure Act, "uphold[ing] [the Authority's] determinations unless they are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' " *Am. Fed'n of Gov't Emps., Local 2343 v. FLRA*, 144 F.3d 85, 88 (D.C. Cir. 1998) (quoting 5 U.S.C. § 706(2)(A)); *see* 5 U.S.C. § 7123(c) (incorporating APA standards of review). Because the "Congress has clearly delegated to the Authority the responsibility in the first instance to construe the [Statute]," *Library of Cong. v. FLRA*, 699 F.2d 1280, 1284 (D.C. Cir. 1983), we review the Authority's interpretation of the FSLMRS under the two-step framework announced in *Chevron*: "If the Congress 'has directly spoken to the precise question at issue,' the court 'give[s] effect to [its] unambiguously expressed intent,' but if the statute is silent or ambiguous the court defers to the Authority's interpretation so long as it is 'based on a permissible construction of the statute,' " *Nat'l Treasury Emps. Union*, 414 F.3d at 57 (quoting *Chevron USA Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984));

---

[5] To put it differently, the Union raises the same argument in its brief that it presented to the Authority but directs that argument to only a portion of the Authority decision—the portion pertaining to covered appointees. This, of course, the Statute permits the Union to do. *See* 5 U.S.C. § 551(13) (reviewable " 'agency action' includes the whole *or a part of* an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act" (emphasis added)); *see also* 5 U.S.C. § 7123(c) (incorporating APA).

*accord NASA v. FLRA*, 527 U.S. 229, 234 (1999). In short, our review of an FLRA decision is "narrow," *Am. Fed'n of Gov't Emps., Local 2343*, 144 F.3d at 88 (quotation marks omitted), and the standards of review are "deferential ones" because "the Authority—not this court—is the expert on federal labor relations," *Nat'l Treasury Emps. Union*, 414 F.3d at 57.

As explained above, the Statute provides that

[a]n exclusive representative of an appropriate unit in an agency shall be given the  opportunity to be represented at . . . any examination of an employee in the unit by a representative of the agency in connection with an investigation if . . . (i) the employee reasonably believes that the examination may result in disciplinary action against the employee; and (ii) the employee requests representation.

5 U.S.C. § 7114(a)(2)(B). The parties stipulated before the arbitrator that some IRS personnel reasonably fear discipline resulting from the suitability interviews conducted by OPM investigators and it is clear that some have requested union representation at the interviews. Thus, the applicability of section 7114(a)(2)(B)—and, consequently, whether the IRS committed an unfair labor practice—turns on whether OPM investigators act as "representatives" of the IRS when they conduct interviews of individuals appointed to covered positions with the IRS.

The Authority concluded that an individual who is not an agency employee may nonetheless act as a "representative" of the agency if he (1) performs an agency function and (2) is subject to agency control. Applying this interpretation of the Statute, the Authority then concluded that OPM investigators do not act as IRS representatives when they interview covered

personnel as part of a suitability investigation because they do not perform an IRS function or operate under IRS control. We first review the Authority's reading of the Statute and then consider whether the Authority properly applied its reading to the facts.

**A.**

At *Chevron* step one, the Court must determine whether the statute is ambiguous with respect "to the precise question at issue"—that is, the meaning of "representative of the agency." *Chevron*, 467 U.S. at 842–43. The Court applies "traditional tools of statutory construction." *Vill. of Barrington, Ill. v. Surface Transp. Bd.*, 636 F.3d 650, 659 (D.C. Cir. 2011) (quoting *Chevron*, 467 U.S. at 843 n.9). The Congress may foreclose an agency's interpretation in one of two ways: "[E]ither by prescribing a precise course of conduct other than the one chosen by the agency, or by granting the agency a range of interpretive discretion that the agency has clearly exceeded." *Id.*

We believe the meaning of "representative of the agency" is ambiguous as there is nothing in the text of the Statute that gives precision to the broad phrase or otherwise evinces a clear congressional intent to foreclose the Authority's interpretation. *Cf. Dep't of the Air Force v. FLRA*, 316 F.3d 280, 285-86 (D.C. Cir. 2003) ("The language of section 7114(a)(2)(A) is quite broad. Because it does not yield a clear and unambiguous interpretation, we move past step one to step two of the *Chevron* inquiry.").[6] Accordingly, we move to step two of the *Chevron* inquiry.

---

[6] Section 7114(a)(2)(A) also uses "representative[ ] of the agency." The Authority has recognized that the phrase has the same meaning and scope in both section 7114(a)(2)(A) and 7114(a)(2)(B)

At *Chevron* step two, "the question for the court is whether the agency's interpretation is based on a permissible construction of the statute in light of its language, structure, and purpose." *Am. Fed'n of Labor v. Chao*, 409 F.3d 377, 384 (D.C. Cir. 2005) (quotation marks and citation omitted). We need not conclude that the Authority's interpretation of the Statute is "the only one it permissibly could have adopted," *Chevron*, 467 U.S. at 843 n.11, or "even the interpretation deemed *most* reasonable by the courts," *Entergy Corp. v. Riverkeeper, Inc.*, 556 U.S. 208, 218 (2009); *accord Am. Forest & Paper Ass'n v. FERC*, 550 F.3d 1179, 1183 (D.C. Cir. 2008) ("Step two of *Chevron* does not require the best interpretation, only a reasonable one."). On the contrary, we defer to an agency's interpretation of a statute so long as it is reasonable. *See Chevron*, 467 U.S. at 844; *Loving v. IRS*, 742 F.3d 1013, 1016 (D.C. Cir. 2014).

Before this case, the Authority had not addressed the issue of when an employee of one agency acts as a "representative" of a different agency. The Union urged the Authority to look to *NASA v. FLRA*, 527 U.S. 229 (1999), for guidance. In *NASA*, the Supreme Court upheld the Authority's determination that investigators employed in the National Aeronautics and Space Administration's Office of Inspector General (NASA-OIG) are "representatives" of NASA. *Id.* at 237-43. Although NASA-OIG investigators enjoy considerable autonomy, the Court concluded that "the investigators employed in NASA's OIG are unquestionably 'representatives' of NASA when acting within the scope of their employment" because OIG investigations are "performed with regard to, and on behalf of, the particular agency in which it is stationed." *Id.* at 240. In concluding that the

and that precedent interpreting one section is applicable to cases interpreting the other. *See, e.g.*, *PBGC*, 62 F.L.R.A. at 223.

investigations were conducted on behalf of NASA, the Court relied in part on the fact that section 3 of the Inspector General Act (IGA) requires OIG investigators to "report to and be under the general supervision of the head of the [agency] involved or, to the extent such authority is delegated, the officer next in rank below such head." *Id.* at 239 (quotation marks omitted); *see also id.* at 240 (excepting congressional committees and the President, "each Inspector General has no supervising authority—except the head of the agency of which the OIG is a part"); *Dep't of Justice v. FLRA*, 266 F.3d 1228, 1230 (D.C. Cir. 2001) ("The *NASA* Court relied at least in part on [section 3 of the IGA] in holding that OIG agents are 'representatives' of their respective agencies."). As part of his supervision of the NASA-OIG, the NASA Administrator had "the ability to require its Inspector General to comply with, *inter alia*, equal employment opportunity regulations." *NASA*, 527 U.S. at 240 n.4. Significantly, the Court made clear that its decision was limited to interpreting section 7114 in relation to the *Weingarten* rights of agency personnel investigated by that agency's OIG. *See id.* at 244 ("To resolve the question presented in this case, we need not agree or disagree with the Authority's various rulings regarding the scope of § 7114(a)(2)(B) . . . ."); *id.* at 244 n.8 ("The process by which the scope of § 7114(a)(2)(B) may properly be determined, and the application of that section to law enforcement officials with a broader charge, present distinct questions not now before us."); *Dep't of Justice*, 266 F.3d at 1232 (applying *NASA* to DOJ OIG investigators but noting, "[a]s was true for the Court in *NASA*," there was no need to address application of section 7114(a)(2)(B) to joint OIG/FBI investigators); *see also U.S. Dep't of Homeland Sec. (USDHS) v. FLRA*, No. 12-1457, slip op. at 10-13 (D.C. Cir. June 3, 2014).

The Authority rejected the Union's suggestion to follow *NASA*, choosing instead to rely on its precedent involving outside contractors. In its contractor cases, the Authority assessed whether contractors hired to perform agency investigations acted as representatives of the hiring agency by examining whether the contractors were performing a "function" of the agency and operating under the agency's "control." *PBGC*, 62 F.L.R.A. at 223-24 (asking "whether the contractor was performing a function that otherwise would have been performed by the agency, and whether the [agency] exercised any control over the contractor"); *SSA*, 59 F.L.R.A. at 880 (contractor acted as representative of agency during investigation because investigation was "an official obligation" of agency and contractor performed investigation under agency's "control and direction"). The Authority reasoned that, "[b]ecause this matter involves investigators who are not employed by the Agency," the "most relevant" precedent is the outside contractor cases, not *NASA*. *Nat'l Treasury Emps. Union*, 66 F.L.R.A. at 509-10. Accordingly, the Authority used the "function and control" analysis to determine whether OPM investigators act as representatives of the IRS during suitability interviews of IRS personnel.

The Union argues that the standard employed by the FLRA is "unreasonably at odds with *NASA*" and "the purpose of Section 7114 itself." Br. for Pet'r 31-32. According to the Union, the Authority's "function and control" test is inconsistent with both the *NASA* and the *Department of Justice v. FLRA* holdings because they "make clear that investigators can be 'representatives' of an agency even when they are operating under their own legal authority and insulated from agency interference or control." *Id.* at 30. The Union further contends that the Authority's interpretation frustrates the Congress's goal, furthered by *NASA*'s interpretation of "representative," of providing fair treatment to federal

employees under investigation. Specifically, the Union asserts that in *NASA*, the Court adopted a broad reading of "representative" both to ensure that an agency cannot side-step its statutory representational duties by outsourcing investigatory tasks and in recognition of the fact that "the participation of a union representative will facilitate a factfinding process and a fair resolution of an agency investigation." *Id.* at 32 (quoting *NASA*, 527 U.S. at 245). NTEU contends that, by reading the Statute in an "unduly narrow" way, the Authority encourages outsourcing and prevents the valuable participation of union representatives. *Id.* at 31-33.

The Authority's interpretation of section 7114 seems eminently reasonable to us. As an initial matter, we note that *NASA* does not mandate a particular reading of "representative of the agency" here. As the Supreme Court made plain in *NASA*, *see* 527 U.S. at 244 & n.8, and as we ourselves have recognized, *NASA* is not to be severed from its factual moorings, *see Dep't of Justice*, 266 F.3d at 1232; *see also USDHS*, No. 12-1457, slip op. at 10-13.

Nor was it unreasonable for the Authority to draw on its own outside contractor cases—and not *NASA*—in construing section 7114. Despite the considerable autonomy enjoyed by the NASA-OIG investigators, they were nonetheless employed by NASA and supervised by the NASA Administrator. *See* 527 U.S. at 239-42. In *Department of Justice v. FLRA*, we concluded that it was the relationship between the OIG investigators and the NASA Administrator that the Supreme Court had relied on, at least in part, in finding that they were acting as NASA representatives. *See* 266 F.3d at 1230. Here, the OPM investigators are not IRS employees and are not supervised by the IRS Commissioner. In addition, the

Commissioner has no authority to require them to comply with particular statutory provisions.[7]

Moreover, we easily reject the Union's claim that the Authority's interpretation of section 7114 enables the IRS to evade covered appointees' *Weingarten* rights through outsourcing.[8] Because it is OPM that ultimately decides who

---

[7] There *are* similarities between *NASA* and this case. For example, the level of cooperation between OPM investigators, who conduct the suitability investigations of covered appointees, and the IRS, which initiates the investigations and makes suitability determinations for at least covered appointees, mirrors the cooperation between OIG investigators and NASA that the Supreme Court found significant in *NASA*. Specifically, the Supreme Court noted that "limitations on OIG authority [to sanction NASA employees] enhance the likelihood and importance of cooperation between the agency and its OIG." *NASA*, 527 U.S. at 242; *see Dep't of Justice*, 266 F.3d at 1231 ("[I]t was the likelihood of . . . cooperation [by OIG and agency management] that the *NASA* Court saw as militating in favor of treating OIG interrogators as 'representatives of the agency.' "). On the other hand, the OIG's lack of authority to sanction employees under investigation is another reason to distinguish *NASA*, as OPM investigators have independent authority to sanction employees for failing to cooperate. *See* 5 C.F.R. § 731.103(g) (OPM retains jurisdiction over "all suitability cases involving a refusal to furnish testimony"). There are often multiple reasonable interpretations of a statute but *Chevron* requires that we defer to the agency's selection. *See Riverkeeper, Inc.*, 556 U.S. at 218; *Am. Forest & Paper Ass'n*, 550 F.3d at 1183.

[8] The Union mistakenly argues that the Supreme Court's interpretation of "representative" in *NASA* is premised on the Court's concern that a narrow reading would encourage an agency to outsource investigations. The portion of *NASA* cited by the Union manifests that it was the *Authority*, not the Court, that was concerned with outsourcing. *See* 527 U.S. at 234 ("The Authority reasoned that adopting their proposal might erode the right by encouraging the

conducts suitability investigations and, hence, suitability interviews of covered appointees, there can be no claim that the Authority's interpretation of "representative" will encourage the IRS to outsource suitability interviews of covered appointees—the investigative authority is simply not the IRS's to delegate. *See, e.g.*, 5 C.F.R. § 731.104; *id.* § 736.201(a),(b); *id.* § 5.2(a). In fact, we think the Authority's interpretation more than adequately addresses any potential outsourcing concerns by ensuring that outside investigators hired to perform agency functions and operating under agency control would nonetheless be considered "representatives" of the agency under section 7114(a)(2)(B).

We are also unconvinced that the Authority's interpretation is unreasonable merely because union participation is not as robust as a broader reading of section 7114 would allow. Although it is true that the *NASA* Court recognized the potential benefits of union participation in the OIG investigatory process, OPM believes "the presence of a third party during a subject interview serves as a potential distraction, reduces the usefulness of the subject interview, and thus reduces the ability of the investigation to get to the most complete and accurate results." JA 101. Given OPM's view, the line drawn by the Authority in interpreting the Statute does not unreasonably restrict union participation in contravention of congressional intent.

**B.**

Having concluded that the Authority's interpretation of "representative of the agency" is reasonable, we must decide whether the Authority's determination that OPM investigators do not perform an IRS function or operate under IRS control

---

use of investigative conduits outside the employee's bargaining unit . . . .").

during interviews of covered IRS appointees was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Am. Fed'n of Gov't Employees, Local 2343*, 144 F.3d at 88 (quoting 5 U.S.C. § 706(2)(A)).

In challenging the Authority's application of the function and control standard, the Union argues that, because the IRS has the authority delegated from OPM to perform suitability *determinations* of covered appointees, *see* 5 C.F.R. § 731.103(a), the *investigation* of them (which includes the interview) is also an IRS function. According to the Union, "OPM investigators act as representatives of IRS by performing a function necessary for IRS to make suitability determinations that it is obligated to make." Br. for Pet'r 26; *see also id.* at 27 ("OPM is . . . performing the function of gathering information needed for IRS to make its determinations."). NTEU also argues that "OPM investigators are simply acting under IRS control by facilitating IRS's suitability determinations of appointees." *Id.* at 27. To support its claim that the IRS controls the investigation of covered appointees, the Union points to, *inter alia*, the following evidence: (1) the IRS tells personnel the suitability investigation is "management's tool for evaluating their character," (2) interviews are held in IRS offices during work time, (3) individuals must receive permission from IRS supervisors before attending the interviews, (4) the IRS requires individuals to attend the interviews and can discipline them if they fail to cooperate and (5) OPM investigators turn over completed investigation files to the IRS.

It is plain, however, that OPM investigators do not perform an IRS function or operate under IRS control during suitability interviews of covered IRS appointees. First, there is little question that the *investigation* of covered appointees is an OPM function as the regulatory scheme expressly entrusts

to OPM the role of conducting suitability investigations of covered personnel. *See* 5 C.F.R. § 731.104(a); *id.* § 736.201(a),(b); *id.* § 5.2(a). Indeed, this case is different from other FLRA cases that use the function and control test. In those cases, the Authority concluded that outside contractors were representatives of an agency because they were "performing a function that otherwise would have been performed by the [agency]." *PBGC*, 62 F.L.R.A. at 224; *see also SSA*, 59 F.L.R.A. at 880 (contractor is agency representative where function being performed is one agency "had an official obligation" to perform). Here, it is OPM's "official obligation" to investigate covered personnel. *SSA*, 59 F.L.R.A. at 880.

Second, it is clear that the IRS does not exercise control over OPM investigators during suitability interviews. The arbitrator determined that there was "no basis or authority for [the] IRS to tell OPM how its investigators should go about conducting their investigatory interviews," and that the IRS could not alter OPM's decision to not "permit [U]nion representatives to participate in" the interviews. JA 200. The Union did not challenge these determinations before the Authority, nor could it, as no statute or regulation permits the IRS to intrude upon an OPM investigation. Thus, although the Union is correct that the IRS has some role in the investigatory process, we conclude, consistent with the arbitrator's uncontested determinations, that the IRS does not control OPM investigators during suitability investigations of covered personnel.

That the IRS has limited authority to make suitability *determinations* for covered appointees does not, as NTEU argues, lead to a different result. The Union's claim that the investigation of covered appointees is an IRS function is based on the notion that, because the IRS makes the suitability

determination, the suitability investigation is performed *for* the IRS. But the limited nature of OPM's delegation to the IRS to make suitability determinations for covered appointees belies the notion that making suitability determinations is really an IRS prerogative and that investigations are done for the IRS. Among other limits on the IRS's authority, the agency must adhere to OPM policies and standards in making suitability determinations or risk revocation of the delegation, s*ee* 5 C.F.R. § 731.103(c),(f); OPM oversees the IRS's exercise of its authority to make suitability determinations, *see* 5 U.S.C. § 1104(b)(2); OPM retains jurisdiction of a case "where there is evidence that there has been a material, intentional false statement, or deception or fraud in examination or appointment" and of a case "involving a refusal to furnish testimony," 5 C.F.R. § 731.103(g); the IRS must refer cases to OPM when "Governmentwide debarment by OPM . . . may be an appropriate action," *id.* § 731.103(b); and OPM "may, in its discretion, exercise its jurisdiction . . . in any case it deems necessary," *id.* § 731.103(g). We are unconvinced that OPM has in any way ceded to the IRS the separate and distinct function of conducting a suitability *investigation*—which it has not delegated to the IRS since 2008—by granting the IRS such limited authority to make a suitability *determination*.

In sum, we conclude that the Authority reasonably construed the "representative of the agency" language in 5 U.S.C. § 7114(a)(2)(B) to support a function and control analysis in determining its applicability *vel non*, *see Nat'l Treasury Emps. Union*, 414 F.3d at 57 (quoting *Chevron*, 467 U.S. at 842-43), and that the Authority's application of its interpretation to OPM-conducted suitability interviews of covered IRS personnel is not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Am. Fed'n of Gov't Employees, Local 2343*, 144 F.3d at 88 (quoting

5 U.S.C. § 706(2)(A)). Accordingly, we deny NTEU's petition for review.

*So ordered.*