# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued September 19, 2019   Decided November 22, 2019

No. 18-1250

NATIONAL TREASURY EMPLOYEES UNION,
PETITIONER

v.

FEDERAL LABOR RELATIONS AUTHORITY,
RESPONDENT

———

On Petition for Review of a Decision and Order
of the Federal Labor Relations Authority

———

*Paras N. Shah* argued the cause for petitioner. With him on the briefs were *Gregory O'Duden* and *Larry J. Adkins*.

*Tabitha G. Macko*, Deputy Chief Counsel, Federal Labor Relations Authority, argued the cause for respondent. On the brief was *Rebecca J. Osborne*, Acting Deputy Solicitor. *Noah B. Peters*, Attorney, entered an appearance.

Before: TATEL and SRINIVASAN, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* Tatel.

TATEL, *Circuit Judge*: When federal employees travel for official business, federal law entitles them to compensation for

certain time and expenses. The labor union representing Customs and Border Protection (CBP) employees proposed a new way to determine an employee's eligibility for travel time and expenses, but CBP took the position that the union's proposal was nonnegotiable because, in CBP's view, the proposal ran afoul of government travel regulations. The Federal Labor Relations Authority (FLRA) agreed with CBP, and the union now petitions for review. Because the FLRA's decision relies on a mathematical error and a misunderstanding of the union's proposal, we vacate and remand.

**I.**

As directed by Congress, the General Services Administration issued the Federal Travel Regulation (FTR), a body of rules dictating by which planes, trains, and automobiles federal employees may travel, as well as under what conditions and to what extent those employees will be compensated for the costs of their journeys. *See* 5 U.S.C. § 5707(a)(1); 41 C.F.R. §§ 300–1.1 et seq. Central to this case, the FTR defines the area including and surrounding an employee's regular workplace—the employee's "[o]fficial station"—as a "mileage radius around a particular point, a geographic boundary, or any other definite domain, provided no part of the area is more than 50 miles from where the employee regularly performs his or her duties." 41 C.F.R. § 300–3.1. When traveling outside of their official stations, federal employees may be eligible for overtime compensation, *see, e.g.*, 5 C.F.R. §§ 551.422(d), 550.112(j), and room-and-board reimbursements, *see, e.g.*, 41 C.F.R. § 301–11.1. Additionally, and also central to this case, the FTR requires that employees traveling for work use "the most expeditious means practicable." *Id.* § 301–70.100(b).

CBP presently defines an official station in terms of fifty *as-the-crow-flies* miles, that is, the Agency draws a circle with

a fifty mile radius around the employee's regular workplace and that area is the employee's official station. But because CBP employees are more likely to travel by car than by crow, the National Treasury Employees Union—the exclusive bargaining representative for CBP employees—sought during collective bargaining to more accurately compensate employees for the costs they actually incur. Specifically, the Union proposed to define an employee's "official station" as "extend[ing] 50 road miles [in every direction] from the employee's official duty station." Pet. for Review at 4, Joint Appendix 4. (A "duty station" is the "location where an employee normally reports for the workday." National Collective Bargaining Agreement Between U.S. Customs and Border Protection and the National Treasury Employees Union (NCBA) 64 (2017).) To illustrate, a crow flying from the Metaline Falls, Washington CBP station to the Porthill, Idaho station will travel 36 miles, but the lowly road driver will travel 55 miles—through a foreign country, no less—to get from one station to the other. Under CBP's current rule, employees traveling the more-than fifty road miles from Metaline Falls to Porthill receive no compensation for overtime and per diem costs; under the Union's proposal, they would be compensated.

CBP took the position that the Union's new way of defining "official station" was nonnegotiable. Under federal law, agencies "may not negotiate over proposed conditions of employment that are 'inconsistent with any Federal law or any Government-wide rule or regulation,'" *U.S. Department of Air Force v. FLRA*, 952 F.2d 446, 448 (D.C. Cir. 1991) (quoting 5 U.S.C. § 7117(a)(1)), and according to CBP, the Union's proposal conflicts with the FTR's definition of "official station." CBP and the Union agreed to sever their dispute, allowing the rest of the collective bargaining agreement to go into effect, and to submit the issue to the FLRA. After hearing the parties' arguments, the FLRA sided with CBP. Analyzing

the Union's road-mile proposal in light of the FTR's definition of "official station," the FLRA concluded that the proposed official station does not qualify as "a mileage radius around a particular point [or] a geographic boundary." *National Treasury Employees Union* ("*NTEU*"), 70 F.L.R.A. 724, 725 (2018) (quoting 41 C.F.R. § 300–3.1). The sole question, then, was whether the Union's road-mile rule would create a "definite domain." Because "'[d]efinite domain' is not defined within the FTR," *id.* at 725 n.22, the FLRA began with the dictionary: "Definite" means "clearly stated or decided; not vague or doubtful," *id.* (quoting *New Oxford American Dictionary* (3d ed. 2010)); and "domain" means "[t]he territory over which sovereignty is exercised," *id.* (quoting *Black's Law Dictionary* (10th ed. 2014)). Relying on these definitions, the FLRA ruled that the Union's proposal ran afoul of the FTR: "It is not a definite area, and could extend more than fifty miles from where the employee regularly performs his or her duties or vary with every employee and every trip." *Id.* at 725–26.

One FLRA member dissented. In response to the majority's concern that each trip would vary in road mileage, the dissenter pointed out that the FTR requires employees to travel "by the most expeditious means practicable," thus rendering "definite" the area in which an employee could travel fifty road miles. *Id.* at 728 (DuBester, Member, dissenting) (internal quotation marks omitted).

The Union now petitions for review. *See* 5 U.S.C. § 7123(a) ("Any person aggrieved by any final order of the [FLRA] . . . may . . . institute an action for judicial review of the Authority's order . . . in the United States Court of Appeals for the District of Columbia.").

## II.

If a reviewing court concludes that an FLRA decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," it must "hold [the decision] unlawful and set [it] aside." 5 U.S.C. § 706(2); *see id.* § 7123(c) (incorporating section 706 standard for judicial review of FLRA orders). Urging us to do just that, the Union argues that its proposal qualifies as a "domain" because it defines an area encompassing all points within fifty road miles of an employee's regular workplace and "definite" because each boundary point—calculated using a "most efficient means" standard—can be readily ascertained through widely available mapping applications. Defending its decision, the FLRA argues that the Union's proposal does not constitute a "domain" because it does not demarcate a geographic area, and it is not "definite" because it leaves open too many variables, such as which mapping app to use and how to adjust for bad weather, traffic, or road closures.

Although the FLRA repeatedly claims that its interpretation of the regulation is "reasonabl[e]," Resp't's Br. 1, 2, 7, 10, it acknowledges, as it must, that we owe it no deference because the Authority did not write the regulation, and we "do not defer to the FLRA's interpretation of regulations promulgated by other agencies," *Air Force*, 952 F.2d at 450; *see* Resp't's Br. 9–10. Of course, the General Services Administration's interpretation of "definite domain" would be entitled to deference, but no one—not CBP, not the Union, not even the FLRA—ever asked it for its views. *See* Oral Arg. Rec. 6:46–8:04. Fortunately, we have no need to define "definite domain" because, regardless of what the term means, the FLRA's decision rests on two glaring errors and is thus arbitrary and capricious. *See American Federation of Government Employees, Local 2924 v. FLRA*, 470 F.3d 375, 380 (D.C. Cir. 2006) ("To be upheld, the decision 'must come

with [such] relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" (alteration in original) (internal quotation marks omitted) (quoting *American Federation of State, County & Municipal Employees Capital Area Council 26 v. FLRA*, 395 F.3d 443, 447 (D.C. Cir. 2005)); *id.* ("[I]f the result reached is 'illogical on its own terms,' the Authority's order is arbitrary and capricious." (quoting *IRS v. FLRA*, 963 F.2d 429, 439 (D.C. Cir. 1992)).

Recall that the FLRA's analysis appears in just one sentence: "It is not a definite area, and could extend more than fifty miles from where the employee regularly performs his or her duties or vary with every employee and every trip." *NTEU*, 70 F.L.R.A. at 725–26. Although this haphazardly comma'd sentence is difficult to unpack, it appears to rest on two propositions: that the Union's proposal would create an official station that, one, extends beyond a fifty-mile-radius circle and, two, varies with each employee and every trip. Neither is correct.

The first proposition is mathematically false. Because the shortest distance between two points is a straight line, *see* James Pryde, *Euclid's Elements of Plane Geometry* 18–19 (1860), an "official station" defined in road miles could never "extend more than fifty miles from where the employee regularly performs his or her duties," *NTEU*, 70 F.L.R.A. at 725–26. The shortest path connecting an employee's workplace to the edge of a fifty-mile-radius circle is a straight road, and that road would measure fifty miles whether traversed by a fleet of cars or a murder of crows. Every other long and winding road from the center of that circle to the edge will exceed fifty road miles, meaning that it is impossible for an area defined by every point an employee could travel within fifty road miles to ever extend beyond a fifty-mile-radius circle.

The FLRA's second proposition—that the Union's proposed "official station" will "vary with every employee and every trip," *id.* at 726—is also flawed, but for a different reason. According to the FLRA, the official boundary will constantly vary because "two trips from [one point to another] could be greater or fewer than 50 miles depending on [the] route taken by the driver," Resp't's Br. 16. But the Authority fails to account for the fact that the FTR requires federal employees to travel "by the most expeditious means practicable." 41 C.F.R. § 301–70.100(b); *see also NTEU*, 70 F.L.R.A. at 728 (DuBester, Member, dissenting). Specifically, employees "must travel to [their] destination[s] by the usually traveled route[s] unless [their] agency authorizes or approves [] different route[s] as officially necessary." 41 C.F.R. § 301–10.7. Moreover, in a provision titled "What is my liability if, for personal convenience, I travel by an indirect route or interrupt travel by a direct route?" the FTR clarifies that employees' "reimbursement[s] will be limited to the cost of travel by a direct route . . . . [Employees] will be responsible for any additional costs." *Id.* § 301–10.8. Therefore, regardless of how many extra miles wandering employees might drive, their eligibility for time and expenses will be determined based on the road miles of the most expeditious route.

The FLRA insists that its sole job was to analyze the Union's proposal in light of "this one reg[ulation]" (section 300–3.1), Oral Arg. Rec. at 20:55–58, not in light of other FTR provisions. But the collective bargaining agreement, in which the Union seeks to include its road-mile metric, itself incorporates a "most expeditious means" standard. The agreement provides, "[n]o employee is entitled to reimbursements that are not permitted pursuant to the Federal Travel Regulation[]" and "the Employer will reimburse the employee for travel and/or moving expenses in accordance with applicable law, regulation (including the Federal Travel

Regulation[]) and the terms of this Agreement." NCBA 66, 223. Additionally, the CBP's own travel policies, contained in its Travel Handbook—also incorporated by reference in the collective bargaining agreement—deploy a "most expeditious means" standard: "Employees must use the mode of transportation that provides the most direct, most traveled route." U.S. Customs and Border Protection, HB 5300-13A, Travel Handbook 2-7 (Nov. 2013). Echoing the FTR, the Handbook provides that when an employee deviates from the direct route "for personal reasons, or by unauthorized modes of transportation," that employee bears responsibility for the additional costs because "[o]nly those travel expenses that are necessary and/or incidental to official travel should be authorized and approved." *Id.* at 1-2, 2-7.

Finally, the FLRA argues that "employees' official stations would be literally unknowable until their travel was completed." Resp't's Br. 15. But CBP's Travel Handbook expressly requires that employees "obtain electronic or written approval to travel . . . *before* the start of a scheduled trip," Travel Handbook 1-1 (emphasis added), and it is presumably during this pre-approval process that CBP, applying the "most expeditious means" requirement, "will select the single, specific route for employees to use." Reply Br. 7; *see also* NCBA at 68 ("Upon timely application, the Agency will take all reasonable steps, consistent with current policies and procedures, to provide travel advances to employees prior to the date of departure on official travel.").

### III.

Although there are miles to go before the parties sleep, it is here that we exit the highway. Because both of the FLRA's reasons for finding the proposal nonnegotiable were flatly wrong, we grant the petition for review, vacate, and remand for further proceedings consistent with this opinion.

*So ordered.*