# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued February 11, 2021          Decided June 22, 2021

No. 20-1148

NATIONAL TREASURY EMPLOYEES UNION,
PETITIONER

v.

FEDERAL LABOR RELATIONS AUTHORITY,
RESPONDENT

———

On Petition for Review of an Order
of the Federal Labor Relations Authority

———

*Paras N. Shah* argued the cause for petitioner. With him on the briefs were *Gregory O'Duden* and *Julie M. Wilson*.

*Noah Peters*, Solicitor, Federal Labor Relations Authority, argued the cause for respondent. With him on the brief were *Rebecca J. Osborne*, Deputy Solicitor, and *Sarah C. Blackadar*, Attorney.

Before: HENDERSON, PILLARD and RAO, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: The Federal Service Labor-Management Relations Statute (FSLMRS or Statute), 5 U.S.C. §§ 7101 *et seq.*, requires federal agencies to

bargain with unions over bargaining unit employees' conditions of employment. The duty to bargain is subject to several statutory exceptions, however, including management's right to assign work and management's right to direct employees. During negotiations over a new collective bargaining agreement (CBA), the United States Department of Agriculture Food and Nutrition Service (FNS) declared that the number of days that an employee was permitted to telework was non-negotiable. The National Treasury Employees Union (NTEU or Union) disagreed and filed a negotiability petition with the Federal Labor Relations Authority (FLRA). In a 2–1 decision, the FLRA found the Union's proposed telework provision was outside the duty to bargain because it affects management's right to assign work under § 7106(a)(2)(B) and management's right to direct employees under § 7106(a)(2)(A).

The Union now petitions for review. Because the FLRA failed to address adequately the relevant telework-eligibility and management-discretion provisions in the proposed CBA, we grant the petition—concluding that the FLRA's decision was arbitrary—and remand to the FLRA.

## I. BACKGROUND

### A. The Statute

"The FSLMRS requires a federal agency to negotiate in good faith with the chosen representative of employees covered by the Statute, 5 U.S.C. § 7114(a)(4), and makes it an unfair labor practice to refuse to do so, § 7116(a)(5)." *Fort Stewart Schs. v. FLRA*, 495 U.S. 641, 644 (1990). Section 7102 establishes the duty to bargain's scope; covered employees have the right "to engage in collective bargaining with respect to conditions of employment." 5 U.S.C. § 7102(2). The Statute in turn defines "conditions of employment" broadly as

"personnel policies, practices, and matters, whether established by rule, regulation, or otherwise, affecting working conditions . . . ." *Id.* § 7103(a)(14). Several exceptions, however, limit the "expansive duty to bargain." *Library of Congress v. FLRA*, 699 F.2d 1280, 1284 n.16 (D.C. Cir. 1983). The Statute's "management rights" provision, 5 U.S.C. § 7106, is such an exception—its applicability means that "a proposal calling for negotiation over exercise of one or more of the management rights enumerated in Section 7106(a) . . . is not within the employing agency's duty to bargain." *Nat'l Treasury Emps. Union v. FLRA*, 691 F.2d 553, 555 (D.C. Cir. 1982). As relevant here, a proposal that affects management's right to assign work or management's right to direct employees is non-negotiable. *See* 5 U.S.C. § 7106(a)(2)(A), (B).

## B. Facts and Procedure

The NTEU is the exclusive representative of the FNS's bargaining unit employees. Under the existing CBA between NTEU and FNS,[1] an eligible bargaining unit employee is permitted "a *maximum* of six days of telework out of ten . . . where the relevant supervisor determines that telework will not interfere with the accomplishment of work." Joint Appendix (J.A.) 58 (Agency's Statement of Position on Petition for Review). The existing CBA includes several eligibility requirements an employee must meet in order to participate in the telework program.

During negotiations over a new CBA, the Union and the FNS exchanged several proposals regarding the CBA's telework provision, Article 20. The FNS's initial proposal maintained the status quo regarding the frequency of

---

[1] Negotiations over a new CBA began on June 22, 2017.

telework—a maximum of six days out of ten.[2] In its proposals dated June 22 and August 16, 2017, the Union requested expanding the telework provision to allow certain eligible employees to telework up to a full-time basis. On March 6, 2018, the FNS modified its proposal, reducing the maximum number of telework days from six to two days out of ten and, on April 18, 2018, it informed the Union that it believed the frequency of telework was non-negotiable pursuant to 5 U.S.C. § 7106.[3] On May 4, 2018, the Union responded that it disagreed with the FNS's position that the frequency of telework was non-negotiable and sent a revised proposal (Proposal) that would allow an eligible employee to telework a maximum of eight days out of ten.

The Union's Proposal provides in Article 20, Section 20.06(2):

> (2) Employees must be in the office a minimum of one (1) workday each week and a minimum of eight (8) hours each work day, taking into consideration telework and alternative schedule arrangements. In order to telework more than six (6) days per pay period (i.e., expanded), an employee must proceed as follows:

---

[2] Six days out of ten corresponds to a maximum of three days of telework per week. The ten-day timeframe refers to the standard ten-workday bi-weekly pay period.

[3] The FNS asserted that U.S. Department of Agriculture Departmental Regulation 4080-811-02, which issued on January 4, 2018, limited the number of days an employee could telework to two out of ten. The FLRA did not address this argument in its decision. *See Nat'l Treasury Emps. Union*, 71 F.L.R.A. 703, 708 n.49 (2020).

(a) **<u>Regular Telework:</u>** Employees who telework six (6) days or fewer per pay period must be in the office a minimum of two (2) workdays each week and a minimum of eight (8) hours each work day, taking into consideration telework and alternative schedule arrangements. The eligibility requirements for regular telework are contained in Sections 20.02 and 20.03 above.

(b) **<u>Expanded Telework:</u>** Eligibility for expanded telework (i.e., seven (7) to eight (8) days per pay period or the equivalent for an alternate work schedule) will be based on the employee meeting the following criteria:

    (i) The employee has teleworked at least six (6) days per pay period (or the equivalent for an alternate work schedule) for a year; and

    (ii) The employee has not had any performance (i.e., a performance improvement plan) or disciplinary issues over the same period;

> (d) Employee requests for expanded telework will not be unreasonably denied.

*Nat'l Treasury Emps. Union*, 71 F.L.R.A. 703, 703–04 (2020) (emphases added).[4]

The Union requested a written declaration of non-negotiability from the FNS regarding the Proposal and, when the FNS did not respond, the Union filed a negotiability petition with the FLRA pursuant to § 7105(a)(2)(E). *See* 5 U.S.C. §§ 7105(a)(2)(E), 7117(c). At the post-petition conference, the Union and the FNS agreed that the Proposal "would allow eligible employees to telework seven or eight days per pay period," subject to management's "discretion to deny an employee's telework request consistent with the parties' agreement." *Nat'l Treasury Emps. Union*, 71 F.L.R.A. at 704.

In a 2–1 decision, the FLRA concluded the Proposal falls outside the FNS's statutory duty to bargain.[5] Specifically, it found the Proposal affects management's right to assign work under § 7106(a)(2)(B) and management's right to direct employees under § 7106(a)(2)(A).

---

[4] The Proposal does not include a subsection (c) because the Union withdrew it before filing its petition with the FLRA. *See Nat'l Treasury Emps. Union*, 71 F.L.R.A. at 704 n.9. The Proposal also has a subsection (e) but the Union did not include subsection (e) in its petition.

[5] The FLRA unanimously concluded that the Telework Enhancement Act of 2010, 5 U.S.C. §§ 6501 *et seq.*, does not provide the FNS with sole and exclusive discretion to establish telework frequency, separate and apart from the FNS's management rights claims. The FNS has not petitioned for review of that portion of the FLRA's decision.

First, the FLRA "determine[d] that the frequency of telework—the 'when' an eligible employee may perform his or her duties away from the duty station and 'when' that eligible employee must report to the duty station—is inherent to management's right to assign work" under § 7106(a)(2)(B). *Id.* at 706. It concluded that its precedent established that management's right to assign work included "the right to determine the particular duties to be assigned, when work assignments will occur, and to whom or what positions the duties will be assigned." *Id.* Relying primarily on two of its precedents involving management's right to determine the hours and days of each work week and management's right to assign overtime,[6] the FLRA extrapolated that "the right to assign work must also include the right to determine 'when' an employee is required to report to the duty station to fulfill his or her duties, here, the frequency of telework." *Id.* at 707. Accordingly, the FLRA concluded "[b]ecause this [P]roposal establishes that a telework-eligible employee could report to the duty station as little as one day per week, the [P]roposal affects management's right to assign work. We will no longer follow cases holding otherwise."[7] *Id.*

Second, the FLRA concluded that the Proposal affects management's right to direct employees under

---

[6] *See Nat'l Treasury Emps. Union*, 71 F.L.R.A. at 707 & nn.32–33 (discussing *Int'l Ass'n of Fire Fighters*, 59 F.L.R.A. 832, 833–34 (2004) and *Pro. Airways Sys. Specialists*, 59 F.L.R.A. 485, 487–88 (2003)).

[7] The FLRA majority identified two FLRA cases holding otherwise but provided no further elaboration: (1) *U.S. HHS, Ctrs. for Medicare & Medicaid Servs. Balt., Md.*, 57 F.L.R.A. 704, 707 (2002) (award enforcing CBA's telework provision did not affect management's right to assign work) and (2) *U.S. FDA, Detroit Dist.*, 59 F.L.R.A. 679, 682–83 (2004) (same). *See Nat'l Treasury Emps. Union*, 71 F.L.R.A. at 707 n.35.

§ 7106(a)(2)(A). The FLRA found it "ha[d] not previously addressed whether a proposal concerning the frequency of telework affects the right to direct employees under § 7106(a)(2)(A)." *Id.* But it concluded the Proposal "imposes substantive restraints on management's 'right to determine the methods used to evaluate and supervise its employees,'" a right the FLRA had previously determined outside the duty to bargain because it affects management's right to direct employees. *Id.* (quoting *Am. Fed'n of Gov't Emps., Local 1712*, 62 F.L.R.A. 15, 17 (2007)).

One member dissented in part, concluding the Proposal was negotiable because it does not affect management's right to assign work or to direct employees under § 7106(a)(2). The dissent found the majority's decision flawed for three reasons: (1) it "fundamentally misinterpret[ed] the Union's [P]roposal;" (2) it "discard[ed] governing Authority precedent in favor of decisions that have little relevance to the [P]roposal;" and (3) it relied on an argument the FNS never raised. *Id.* at 709 (DuBester, Member, dissenting in part).

First, the dissent concluded that the majority mischaracterized the Proposal by ignoring the criteria on which the FNS may deny a telework request, as enumerated in Sections 20.02 (Eligibility for Telework),[8] 20.03 (Requests for

---

[8] Section 20.02(1)(a) provides that an employee's position is ineligible for telework if: "(i) Duties require the employee's physical presence to perform particular tasks that can only be performed at the traditional worksite on a daily basis; (ii) Duties require the employee's daily presence at the traditional worksite for contact with the public or co-workers; (iii) Duties require the employee's daily use of specialized equipment located only at the traditional worksite; or (iv) Duties require the employee's daily handling of classified materials." J.A. 111. Moreover, Section 20.02(1)(b) provides that an employee is ineligible for telework if: "(i) The employee's most

Telework)[9] and 20.06 (Other Considerations for Approval of Telework Request).[10] *Id.* Most importantly in the dissent's view, subsections 20.06(1) and (3) clarified that the approval of an employee's request for telework was subject to the FNS's ability to accomplish its work and, even after initial approval, it reserved the right to change an employee's telework schedule as "necessary for the [FNS] to accomplish its work." *Id.* (quoting Section 20.06(3)).

recent summary performance rating is less than Fully Successful; (ii) The employee has been officially disciplined for viewing, downloading, or exchanging pornography, including child pornography, from a government computer or while performing official Federal Government duties, in accordance with the Telework Enhancement Act; (iii) The employee has been officially disciplined for being absent without permission (AWOL) for more than five (5) days in any calendar year, pursuant to the Telework Enhancement Act; or (iv) The employee is currently on a Performance Improvement Plan (PIP)." *Id.*

[9] Section 20.03(2) provides that a "supervisor may approve an eligible employee's request for telework" if the employee (1) "[p]ossesses a reasonable level of experience in the current job;" (2) "[p]ossesses the ability to perform successfully in the telework arrangement;" and (3) "[h]as defined work that can be measured or otherwise evaluated in terms of timeliness, quality and/or quantity." J.A. 111–12.

[10] Section 20.06(1) provides that "[a]ll telework arrangements are subject to prior supervisory approval. The approval or disapproval of an employee's request for telework will be based upon whether the approval of the telework request will interfere with the [FNS]'s ability to accomplish its work. Decisions will be made on a case-by-case basis." J.A. 113. Section 20.06(3) provides that "once a telework request is approved, the [FNS] reserves the right to make changes in an employee's telework schedule, if it is determined that a change in an employee's telework schedule is necessary for the [FNS] to accomplish its work." J.A. 114.

Second, the dissent concluded that the majority's mischaracterization of the Proposal had significant implications because the FLRA had "previously found that a proposal merely establishing eligibility requirements for telework does not affect management's rights to 'assign and direct employees.'" *Id.* at 710 (quoting *Nat'l Ass'n of Gov't Emps., Local R1-144*, 65 F.L.R.A. 552, 555 (2011)). Moreover, the dissent found that "the cases cited by the majority to support th[e] conclusion [that the Proposal affects the FNS's right to assign work] bear no relevance to the [P]roposal before us." *Id.* (footnote omitted).

Third, the dissent maintained that the "majority's conclusion that the [P]roposal affects the [FNS]'s right to direct employees under § 7106(a)(2)(A) [wa]s equally flawed" because "the [FNS] never raised the arguments upon which the majority relie[d] to find that the Union's [P]roposal affects its right to direct employees." *Id.* at 711. The dissent also found the FLRA decisions on which the majority relied were inapposite.

The Union timely petitioned for review of the FLRA's decision.

## II. ANALYSIS

In its 2–1 decision, the FLRA concluded that the Proposal "dictates to management how often the [FNS] can require an employee to perform work at the duty station" and "precludes" management from using certain methods of employee supervision. *Nat'l Treasury Emps. Union*, 71 F.L.R.A. at 707 (emphasis omitted). But, as the Union points out, this interpretation "conflicts with the [P]roposal's plain terms, related provisions of the [CBA], and NTEU and FNS's shared understanding of the [P]roposal." Pet'r's Br. 25. Because the FLRA majority failed to address the specific proposed CBA

provisions related to telework eligibility and FNS management discretion, its decision—that the Proposal affects management's rights to assign work and to direct employees and therefore falls outside the duty to bargain—was not reasonably explained.

First, we have jurisdiction to consider the Union's argument that the FLRA misinterpreted the Proposal. *See* 5 U.S.C. § 7123(a). Section 7123(c) of the FSLMRS provides that "[n]o objection that has not been urged before the Authority, or its designee, shall be considered by the court, unless the failure or neglect to urge the objection is excused because of extraordinary circumstances." *Id.* § 7123(c). "We have enforced section 7123(c) strictly, recognizing that if a party were permitted to raise an argument for the first time in its petition for review, 'the initial adjudicatory role Congress gave to the Authority would be transferred in large measure to this court, in plain departure from the statutory plan.'" *Nat'l Treasury Emps. Union v. FLRA*, 754 F.3d 1031, 1040 (D.C. Cir. 2014) (quoting *Dep't of Treasury v. FLRA*, 707 F.2d 574, 580 (D.C. Cir. 1983)). But "[a] party is not required to invoke 'magic words' in order to adequately raise an argument before the Authority." *Id.* (quoting *U.S. Dep't of Com. v. FLRA*, 672 F.3d 1095, 1102 (D.C. Cir. 2012)). "Instead, an argument is preserved if the party has 'fairly brought' the argument 'to the Authority's attention.'" *Id.* (quoting *U.S. Dep't of Com. v. FLRA*, 7 F.3d 243, 245 (D.C. Cir. 1993)).

The Union's interpretation of the Proposal was adequately raised before the FLRA. In its brief before the FLRA, the Union stated it "readily admits that there is no guarantee that an employee will be granted telework under the [CBA], as an employee must satisfy all the existing eligibility standards in Sections 20.02, 20.03, and 20.06(1)." J.A. 170 n.5 (Union's Response to Agency's Statement of Position). As noted,

12

however, the FLRA majority interpreted the Proposal to "dictate[] to management how often the [FNS] can require an employee to perform work at the duty station." *Nat'l Treasury Emps. Union*, 71 F.L.R.A. at 707. The FLRA's characterization of the Proposal as a "presumptive entitlement" to telework that "dictates to management" telework frequency conflicts with the Union's explanation that the Proposal provides "no guarantee" of telework to any employee. *See id.* at 704 n.11, 707; J.A. 170 n.5. Accordingly, the Union's misinterpretation argument is properly before us.[11]

We review FLRA decisions in accordance with the Administrative Procedure Act's judicial review provision. *See* 5 U.S.C. § 7123(c). Accordingly, "we uphold [the FLRA's] determinations unless they are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Am. Fed'n of Gov't Emps., Local 2343 v. FLRA*, 144 F.3d 85, 88 (D.C. Cir. 1998) (quoting 5 U.S.C. § 706(2)(A)). "Under the arbitrary and capricious standard of review, we must ensure that the Authority 'examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'" *Am. Fed'n of Gov't Emps., Local 1929 v. FLRA*, 961 F.3d 452, 456 (D.C. Cir. 2020) (alterations in original) (quoting *Fred Meyer Stores, Inc. v. NLRB*, 865 F.3d 630, 638 (D.C. Cir. 2017)). "Put differently, to survive arbitrary and capricious review, the Authority must show that it engaged in reasoned decisionmaking and that its decision was reasonable and

---

[11] Although we ordered supplemental briefing to address "whether the court has jurisdiction to consider [all] the arguments raised in the petition for judicial review," Order, *Nat'l Treasury Emps. Union v. FLRA*, No. 20-1148 (D.C. Cir. Feb. 12, 2021), we do not reach whether we have jurisdiction of the Union's other arguments because we grant the petition based on the FLRA's inadequate explanation for its interpretation of the Proposal.

reasonably explained." *Id.* (internal quotations and citations omitted).

A careful review of the Proposal and related CBA provisions makes plain that the FLRA did not reasonably explain how its interpretation of the Proposal—that it "dictates to management how often the [FNS] can require an employee to perform work at the duty station"—follows from the proposed CBA's text and structure. *Nat'l Treasury Emps. Union*, 71 F.L.R.A. at 707. Specifically, the FLRA failed to address the proposed CBA provisions limiting telework eligibility and maintaining management discretion to deny a telework request. Rather than explain how the proposed CBA's text and structure were consistent with its interpretation of the Proposal, the FLRA majority made no mention of these CBA provisions. Nor did it discuss whether its management rights analysis applied equally to "expanded telework" in Section 20.06(2)(b) and "regular telework" in Section 20.06(2)(a).

To receive approval for "*[a]ll* telework arrangements," an employee must get "prior supervisory approval." J.A. 113 (Section 20.06(1)) (emphasis added). Supervisory approval is based on whether the telework request "interfere[s] with the [FNS]'s ability to accomplish its work." *Id.* In other words, supervisors have the discretion to deny a telework request if they determine the request negatively affects the FNS's work.

In addition, the proposed CBA limits an employee's eligibility for telework in Sections 20.02 and 20.03, as stated explicitly in Section 20.06(2)(a). Telework eligibility requirements include: (1) whether the employee's physical presence is required either for contact with the public or co-workers or to perform particular tasks; (2) whether the employee has sufficient experience on the job; and (3) whether the employee's work can be evaluated for timeliness, quality

and/or quantity. *See* J.A. 110–12 (Section 20.02(1)(a)(i), (ii); Section 20.03(2)(a), (c)).[12] Moreover, to be eligible to apply for "expanded telework," the employee must have already received FNS approval to "telework[] at least six (6) days per pay period . . . for a year," *i.e.*, the maximum amount allowed pursuant to "regular telework," and have had no "performance . . . or disciplinary issues over the same period." J.A. 114 (Section 20.06(2)(b)(i)–(ii)).

Finally, the FNS has the authority "to make changes in an employee's telework schedule, if it is . . . necessary for the [FNS] to accomplish its work." J.A. 114 (Section 20.06(3)); *see also* J.A. 118 (Section 20.07(8)) ("Supervisors may modify or terminate an employee's Telework Agreement whenever the employee no longer meets the criteria outlined in this Article, does not conform to the terms of the Telework Agreement, or when the arrangement no longer supports the [FNS]'s mission."). Thus, in addition to its discretion to deny a telework request, the FNS can revoke or alter an employee's telework schedule.

In its decision, however, the FLRA majority never addressed the discretion afforded FNS management or the various telework-eligibility requirements embedded in the proposed CBA. It referenced the text of the Proposal only in a single footnote which, in its entirety, reads:

> The dissent reads the [P]roposal as though it merely sets forth minimum requirements for telework, while allowing supervisors unlimited discretion to deny telework requests from eligible employees. But that reading cannot be

---

[12] *See also* J.A. 112 (Section 20.03(4)) ("Situations appropriate for telework depend on the specific nature and content of the job, rather than just the job series and title.").

> squared with the [P]roposal's plain wording, which creates a *presumptive entitlement* to 80% telework for employees who have teleworked at least six days per pay period the previous year and have "not had any performance (i.e., a performance improvement plan) or disciplinary issues over the same period." The [P]roposal creates a strong presumption that all such requests will be granted by mandating that telework requests from eligible employees will not be "unreasonably denied." In practice, this means that any manager who denies 80% telework to an eligible employee can expect to face a grievance alleging that the denial was unreasonable.

*Nat'l Treasury Emps. Union*, 71 F.L.R.A. at 704 n.11 (emphasis added) (citations omitted). Notably absent from the FLRA majority's decision is any discussion of both the specific telework-eligibility requirements set forth in Sections 20.02 and 20.03 and the FNS's case-by-case discretion regarding employee telework requests set forth in Sections 20.06(1) and 20.06(3). Nor does the FLRA majority explain how those proposed CBA provisions can be squared with its categorization of the Proposal as a "presumptive entitlement" to telework four days a week.

On appeal, the FLRA seeks to deflect the Union's misinterpretation argument by focusing on Section 20.06(2)(d). It asserts that "the Proposal would make it extremely difficult, if not impossible, for managers to require 'eligible employees' to work in the office more than one day per week" because Section 20.06(2)(d) "states that '[e]mployee requests for expanded telework will not be unreasonably denied.'" Resp't's Br. 23 (alteration in original) (quoting *Nat'l*

*Treasury Emps. Union*, 71 F.L.R.A. at 704). But the FLRA majority did not focus on Section 20.06(2)(d) in its decision; it noted the provision only briefly in the footnote discussed *supra*.

It is well-settled that the "grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943). The record does not support the conclusion that the FLRA relied on Section 20.06(2)(d) to conclude that the Proposal affects management's right to assign work and management's right to direct employees. Instead, the FLRA majority referred to the working condition at issue as "the frequency of telework" without adequately assessing that working condition within the text or structure of the Proposal before it. *Nat'l Treasury Emps. Union*, 71 F.L.R.A. at 707. Although the FLRA, in its appellate brief, attempts to remedy that defect via reference to Section 20.06(2)(d), we "may not accept appellate counsel's *post hoc* rationalization for agency action." *Erie Brush & Mfg. Corp. v. NLRB*, 700 F.3d 17, 23 (D.C. Cir. 2012) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)). Moreover, Section 20.06(2)(d), by its terms, applies only to *expanded* telework and does not void any of the proposed CBA's other telework-eligibility requirements. Although not completely clear, it does not appear that the FLRA decision was limited to "expanded telework."[13]

---

[13] Because the FLRA did not clearly limit its decision to expanded telework, we do not resolve whether the FLRA could have reasonably found that the Proposal created a regular teleworker's "presumptive entitlement" to expanded telework. The prospect of baseless grievances, however, would not amount to a "presumptive entitlement" to telework that could justify the FLRA's interpretation of the Proposal.

The FLRA decision failed to acknowledge the proposed CBA's numerous eligibility provisions applicable to both expanded telework and regular telework. And it muddled the Proposal's distinction between expanded telework and regular telework through its general reference to "the frequency of telework." Because it is based on "a misunderstanding of the union's proposal," the FLRA decision is not a product of reasoned decisionmaking. *See Nat'l Treasury Emps. Union v. FLRA*, 942 F.3d 1154, 1155 (D.C. Cir. 2019); *see also Am. Fed'n of Gov't Emps., Local 2924 v. FLRA*, 470 F.3d 375, 380 (D.C. Cir. 2006) ("To be upheld, the decision 'must come with [such] relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" (alteration in original) (internal quotations omitted) (quoting *Am. Fed'n of State, Cnty. & Mun. Emps. Cap. Area Council 26 v. FLRA*, 395 F.3d 443, 447 (D.C. Cir. 2005))).

In sum, reasoned decisionmaking requires the FLRA to consider the Proposal's specifications, together with the proposed CBA's relevant telework-eligibility and management-discretion provisions, in order to determine whether the Proposal affects management's rights under § 7106(a).

For the foregoing reasons, we grant the Union's petition for review, vacate the FLRA's decision in part[14] and remand to the FLRA for further proceedings consistent with this opinion.

*So ordered.*

---

[14] As noted, *see supra* note 5, the FLRA's determination that the Telework Enhancement Act of 2010 does not provide the FNS with sole and exclusive discretion to establish telework frequency is not before us. We vacate only the FLRA's conclusion that the Proposal affects management's rights to assign work and to direct employees.